UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| DONNA SCOTT, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:08-273-JMH |
| | ) |
| v. | ) |
| | ) |
| | ) |
| GARRARD COUNTY FISCAL COURT, et al., | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| | ) |
| Defendant. | ) |

** ** ** ** **

This matter is before the Court on the motion for partial summary judgment of Defendants Garrard County Fiscal Court, Fred Simpson, and John Wilson, individually and in his official capacity as Garrard County Judge Executive [Record No. 14], and the motion for partial summary judgment of Plaintiff Donna Scott [Record No. 15]. Responses have been filed with regard to each motion [Record Nos. 16 and 17], as well as replies in further support of each motion by the respective Movants [Record Nos. 20 and 21]. The Court being adequately advised, these motions are ripe for decision.

As a whole, this case concerns the legality of actions taken by the Garrard County Fiscal Court and its agents with regard to a gate placed across a roadway located on Plaintiff Scott's private property in Garrard County. The cross-motions at bar, however, ask the Court to address the relatively straightforward issue of whether the road which crosses Plaintiff's property is a county

road or a private roadway. For the reasons which follow, the Court concludes from the undisputed evidence that Lanham Lane, the thoroughfare at issue in this matter, is a private roadway.

I.  BACKGROUND

    A.   Lanham Lane and Scotts Fork Road

Lanham Lane is a narrow, partially graveled roadway or path which lies wholly within private property that Plaintiff has owned for more than 20 years. Lanham Lane is entered from Poor Ridge Pike (State Route 563) near Scott's Fork Church. The roadway then runs approximately 400 yards alongside Scott's Fork Creek and terminates in a wooded area at a bend in the creek.

The path followed by Lanham Lane was historically part of a much longer roadway known as Scotts Fork Road.[1] Roughly, Scotts Fork Road began at an intersection with what is now known as Kentucky Highway 363 and terminated at the Kentucky River. Over time, portions of that former thoroughfare were renamed in a piecemeal fashion by the Garrard County 911 Commission to assist emergency care providers in locating individual residences in Garrard County. Through that process, Lanham Lane came by its name

---

[1] Defendants have painstakingly presented evidence taken from public records of Garrard County to demonstrate that, as early as 1879, maps identify a public thoroughfare known as Scotts Fork Road which largely corresponds with the path of the modern roadway known as Scotts Creek Road present on a 1990 edition of the Kentucky Transportation Department's General Highway Map for Garrard County, Kentucky. Defendants have also presented evidence of references to that road in historical documents from as early as 1858.

in 2001, at which time a red signpost was erected by the 911 Commission near the entrance to the roadway from Poor Ridge Pike.[2] Prior to that time, the lane was unmarked, and no sign bore a designated name.

The modern version of Scott's Fork Road runs along Scott's Fork Creek and to the south of Lanham Lane. On a 1988 County Road Series Map for Garrard County, Scotts Fork Road (CR-1010) is shown to end shortly to the northwest, i.e., downstream, of the point at which Montgomery Branch flows into Scott's Fork Creek.[3] On the same map, Scotts Fork Road is not portrayed as connecting with SR-563 (Poor Ridge Pike). Neither Lanham Lane nor any other roadway appears on the 1988 map heading east or southeast from SR-563 in the vicinity of Scott's Fork Church.

Defendants would have this Court believe that Lanham Lane is a mere portion of the modern incarnation of Scotts Creek Road and part of a continuous roadway, proceeding in a southwesterly direction from Kentucky Highway 563 to Tom Murphy Road, to the southeast. This does not, however, describe what one would actually find if one decided to walk along the entirety of that path. Indeed, Defendants do not deny that Lanham Lane ends in a

---

[2] Red signposts are used to mark private roads in Garrard County, although it is undisputed that errors in designation of roads by signpost color as private or public have been made in the process of setting signposts.

[3] The 1988 Map was approved by the GCFC as the official system of roads for the County.

wooded area and that there is a large gap between the end of the lane and the northern terminus of the road currently known Scotts Creek Road, estimated by Plaintiff to be a nearly a half mile away from the southernmost end of Lanham Lane with no paved or other improved way, such as gravel or compacted earth, to be traversed between them. The modern incarnation of Scott's Fork Road, designated CR (County Road) 1010, heads southeastward from this northernmost point and eventually intersects Sad Lane (CR 1019) and then Tom Murphy Road (CR 1012). Beyond Tom Murphy Road, at its southern end, Scotts Fork Road trails off and the thoroughfare becomes what is now designated as a private road, PV-1025. All of this is to say that the modern version of Scott's Fork Road is substantially shorter than was its historical predecessor, as portions of the path followed by the road have fallen out of use or have ceased to exist.

**B.    Use and Maintenance of Lanham Lane and Scotts Fork Road**

Since that time, on the request of a neighboring property owner, gravel was placed on the lane and the grass was mowed. However, when a flash flood subsequently washed out the Lane near the entrance at Poor Ridge Pike, the County disclaimed any responsibility for maintenance of Lanham Lane, and Plaintiff Scott spent several thousand dollars to repair the damage to the Lane.

**C.    The Dispute**

During Plaintiff's twenty-year tenancy of the property on

which Lanham Lane is located, she grew weary of the parade of individuals who, although unauthorized to be on her property, used the Lane to "go four-wheeling and partying." Based on a belief that Lanham Lane was a private road, in 2007, Scott put up a locked gate across Lanham Lane near the intersection with Poor Ridge Pike and offered a key to the owners of nearby properties. At some point, the presence of this gate became the subject of complaints made to the Garrard County Fiscal Court (hereinafter, "GCFC") and to Garrard County Executive John Wilson by nearby property owners.

The gate became the subject of public discourse in Garrard County, and, ultimately, the GCFC heard from these nearby property owners and from Scott at a regularly scheduled meeting on August 13, 2007. At the conclusion of the hearing, the GCFC directed the Garrard County Road Foreman to remove the gate Scott erected across the road on a motion adopted by a 4-1 vote. Defendants contend that implicit in its determination was a decision that the road in dispute was a county roadway, not a private roadway as Scott contends. The day following the meeting of the GCFC, the gate was removed.

Scott brought this action under 42 U.S.C. § 1983 alleging violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. Plaintiff contends that removal of that gate from her private property by the agents of the GCFC was wrongful. She argues that, even assuming that Lanham Lane was

at one time part of a county road, its status as a county road ceased prior to August 2007 by virtue of the County's neglect of the road. GCFC argues that Lanham Lane never ceased to be a county road and that it acted properly when it removed the gate from what it claims to be a county-maintained road in response to complaints from the public.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In considering a motion for summary judgment, the Court must construe the facts in the light most favorable to the nonmoving party. *Id*. at 255.

## III. DISCUSSION

**1) KRS 178.116**

In the Commonwealth, roads are maintained by federal, state, county, municipal, and private means, depending on their status. The status of the roads in the Commonwealth is not, however, static, and it can change over time depending on a variety of factors. For example, under KRS § 178.070, a county fiscal court may affirmatively act and cause a county road to cease to have such status: "[t]he fiscal court may direct any county road to be discontinued." By contrast, KRS § 178.116 provides for the discontinuance and reversion of possession of county roads without action by a county fiscal court under certain circumstances:

> Any county road, or road formerly maintained by the county or state, shall be deemed discontinued and possession shall revert to the owner or owners of the tract of land to which it originally belonged unless at least one (1) of the following conditions exists:
>
> (a)  A public need is served by the road;
>
> (b)  The road provides a necessary access for a private person;
>
> (c)  The road has been maintained and policed by the county or state within a three (3) year period.[4]

KRS § 178.116(1). By its own terms, KRS § 178.116 is self-actuating and possession reverts to the property owner in the

---

[4] Of interest, in 1979, the Kentucky Supreme Court also emphasized that a public road (distinct from the class of roads known as county roads) could cease to have such status without formal action by virtue of mere non-use. *See Sarver v. Allen Co.*, 582 S.W.2d 40, 41 (Ky. 1979).

absence of one of the three conditions listed therein.  *See* KRS § 446.010(30) ("shall" is mandatory).

Defendants argue that a county road cannot lose its status by operation of law, citing *Blakenship v. Acton*, 159 S.W. 330 (Ky. Ct. App. 2004).  Defendants claim that *Blankenship* requires formal action to discontinue a road pursuant to KRS 178.116(1).  The Kentucky Court of Appeals' statement in *Blankenship* that "KRS 178.11(1) requires formal action to discontinue 'any county road, or road formerly maintained by the county or state'" is *dicta* because the Court found that the KRS 178.116 did not apply to public roads like the one at issue in that case.  In *Blankenship*, unlike in this case, there was a neighboring property owner who utilized the disputed road to haul out timber and crops and haul in fertilizer.  As discussed below, Defendants have not presented any evidence to support a finding that Lanham Lane provides necessary access to any adjacent property owners.  Though poorly drafted, the Kentucky Court of Appeals seems to have been quoting the language in KRS 178.116(1) in relation to the necessary private access of the disputed road and KRS 178.116(2)-(5).  As that situation is not presented here, and the fact that the language in *Blankenship* is *dicta* regardless, this Court finds that *Blankenship* is not controlling for the case at bar.  Furthermore, in June 2009, the Kentucky Court of Appeals stated in an unpublished opinion that

> the Kentucky General Assembly enacted KRS 178.116 to address the informal discontinuance of roads adopted or

> maintained by the county.  Under KRS 178.116(1), ownership of an informally discontinued county road may revert to prior owners of the land under certain circumstances: [quoting the statutory language]. However, such automatic reversion of roadway ownership does not apply to those county roads which are formally discontinued by fiscal court action pursuant to KRS 178.070."

*Bailey v. Preserve Rural Roads of Madison County, Inc.*, 2009 WL 1562936, at *2 (Ky. App. June 5, 2009). Though unpublished, this more recent Kentucky Court of Appeals decision confirms the fact that in the absence of one of the three events listed in KRS 178.116(1)(a)-(c), no formal action is needed to discontinue a county road. Stated differently, unless one of the events in KRS 178.116(a)-(c) is present, KRS 178.116 is self-actuating.

Defendants next argue, without citation to authority, that KRS § 178.116(1) cannot operate to discontinue the county road status of a mere 400 yards of roadway, part of a larger whole, without regard to the effect of that change in status on the remainder of the thoroughfare as a whole. The Court would be inclined to consider such an argument in more detail if, indeed, Lanham Lane was shown to be contiguous to and part of longer roadway.

Having considered the arguments of the parties and the undisputed facts material to this decision, the Court concludes that there is no evidence that (a) public need is served by Lanham Lane, (b) that Lanham Lane provides a necessary access for a private person to his or her property, or (c) that road was maintained or policed by the county or state within a three year

period prior to the Plaintiff's erection of the gate which is the subject of the controversy at hand. Therefore, as described in detail below, none of the conditions in KRS 178.116(1) are present and the road has automatically reverted back to the owner of the tract of land to which it originally belonged.

### a. Public Need

As an initial matter, there is no evidence of "a public need . . . served by the road." The evidence presented in this matter demonstrates that the public does not and cannot use Lanham Lane to access anything of interest, public or otherwise, other than Plaintiff's property or an additional stretch of contiguous roadway because it does not exist. Even though a few neighbors or other individuals may have trod upon Lanham Lane, "[t]he sporadic use of a passway by a few neighbors or members of the general public does not turn it into a public road." *Cole v. Gilvin*, 59 S.W.3d 468, 474 (Ky. Ct. App. 2001). Having considered the evidence presented, the Court concludes that the roadway known as Lanham Lane, as it has existed in the time period relevant to this action, serves merely a private purpose, allowing travel from a state highway to the interior of Plaintiff's property. It does not extend beyond the boundaries of Plaintiff's property nor does it even reach the bounds of that property.

### b. Necessary Access

Defendants have presented evidence that five families (the

10

Christophers, the Graves, the Lambs, the McFerrons, and the Roysters) who own land along Scotts Fork Road have sole access to their respective properties by virtue of Scott's Fork Road. Kentucky statute defines "necessary access" as "access to any farm, tract of land, or dwelling, or to any portions of such farm, tract of land, or dwelling." KRS § 178.16(5). Access is not necessary merely because it is the preferred or easier route compared to another way. *Cf. Sullivan v. Louisville,* 163 S.W.2d 17, 18 (1942). None of the affidavits submitted by Defendant, however, indicate that access to these properties is provided by virtue of that 400 yard stretch of gravel roadway known as Lanham Lane.

### c.   County or State Maintenance or Policing

Finally, there is no evidence of systematic (or even periodic or sporadic) maintenance or policing of Lanham Lane by agents of Garrard County or the Commonwealth of Kentucky. The sole instance in which the County may have provided maintenance work was over 18 years ago, and, the evidence shows that, in the face of a subsequent request for maintenance, the County disclaimed responsibility for reconstructing or repairing Lanham Lane after part of it washed out during a flash flood. Indeed, Defendants have brought forward no evidence of maintenance or other work performed on the specific stretch of roadway known as Lanham Lane. Instead they have offered a conclusory and entirely unsatisfactory statement by a former county official that unidentified portions of

Scotts Fork Lane, which the Court knows to extend well beyond the 400 yard length of Lanham Lane, even if the two roads are assumed to be one and the same, were maintained by Garrard County sometime in the 1990s.

### 2) GCFC's Acts and Admissions

Assuming *arguendo* that Lanham Lane was ever a county road (making KRS 178.116 applicable to it), based upon the GCFC's own acts and admissions, any such status was discontinued long before August 2007. On October 11, 1988, the GCFC considered and approved a map presented by the Department of Transportation as the official system of county roads for Garrard County. In its official minutes, the GCFC stated that, "[a]ny road that is not shown on this map is not a county road." On that map, Scott's Fork Road is depicted as beginning at State Route 39 (Buckeye Road) and dead-ending at a point near Scott's Fork Creek, east-south-east of Scott's Fork Church, without coming close to State Route 563 (Poor Ridge Pike). Lanham Lane is not depicted on the map.

As time passed, the Kentucky Transportation Cabinet developed the County Road Series Map to facilitate monitoring state funds allocated to counties for construction and maintenance of county roads and bridges, then presented the map to the respective county for adoption. "Presumably a fiscal court would want such map to show every lawfully accepted county road within the county, in order to provide documentation that a given road is eligible for

12

expenditure of state funds made available pursuant to KRS 177.320." OAG 93-48.

Further, more than ten years later, Lanham Lane was designated as a private road by Garrard County 911 officials, to whom the task of "planning, mapping and addressing Garrard County" for the purposes of providing enhanced emergency 911 services was delegated by the GCFC.

Finally, GCFC's own County Attorney, after GCFC's request for a legal opinion on the topic, concluded that "Lanham Lane is not a part of the road system of Garrard County" and that GCFC had "no authority to remove the gate currently in place across Lanham Lane." [Pl.'s Mot. for Partial Summ. J., Ex. M.] At a July 9, 2007 GCFC meeting, the controversy over the gate was designated "old business," and County Attorney Jeff Moss was asked "for a legal opinion in re to Lanham Lane being a county or private road and what obligation the county has for maintaining said road." [*Id.*, Ex. F.] Moss reported on the issue in a three-page memorandum dated July 16, 2007, in which he concluded that "Lanham Lane is not part of the road system of Garrard County." [*Id.*, Ex. M.] In reaching his conclusion, he relied on the absence of the Lane from the 1988 Map and from road lists used by previous county administration's road departments, listings showing Lanham Lane as a private road, and his finding that there was no record that it "had been accepted into the county road systems at any time." [*Id.*,

Ex. M.] He also reported that he had driven along Lanham Lane and observed its physical characteristics, noting that it did not appear "that this road has been up to county specifications required for a road to become part of the county road system." [*Id.*] He advised the Fiscal Court that it had "no authority to remove the gate currently in place across Lanham Lane."

Scott contends that the approval of the 1988 Map, the 911 emergency services sign depicting a Lanham Lane as a private road, and the County Attorney's written report on the status of Lanham Lane each qualifies as an admission by a party-opponent, and the Court agrees. Fed. R. Evid. 801(d)(2). Pursuant to Fed. R. Evid. 801(d)(2), an admission by a party-opponent is not hearsay if the statement is "offered against a party and is (A) the party's own statement, in either an individual or representative capacity or . . . (C) a statement by a person authorized by the party to make a statement concerning the subject . . . ." The approval of the 1988 Map at the GCFC meeting, and the declaration that "[a]ny road that is not shown on this map is not a county road," recorded in the meeting minutes, is a statement made by Defendant which Scott offers against Defendant. Scott also states, and GCFC does not deny, that Garrard County 911 officials were designated by GCFC to provide 911 emergency services, including erecting signs to aid emergency responders. Therefore, the erection of a sign designating Lanham Lane as private is also an admission of GCFC

through non-verbal conduct, pursuant to Fed. R. Evid. 801(a)(2). Finally, GCFC specifically requested that County Attorney Jeff Moss issue an opinion as to the status of Lanham Lane. Clearly, this request authorized Moss to "make a statement concerning the subject." The report Moss provided GCFC, stating that Lanham Lane was not a county road, is therefore also an admission by GCFC.

## IV. CONCLUSION

The Court finds that pursuant to KRS 178.116(1), as well as the County's own acts and admissions, Lanham Lane shall be deemed discontinued as a county road, if it ever was classified as such.

Accordingly, **IT IS ORDERED** that Plaintiff's motion for partial summary judgment [Record No. 15] be, and the same hereby is, **GRANTED**; and Defendants' motion for partial summary judgment [Record No. 14] be, and the same hereby is, **DENIED**.

This the 18th day of March, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge