UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |
|---|---|
| DONNA SCOTT, | |
| Plaintiff, | Civil Action No. 5:08-CV-273-JMH |
| v. | |
| GARRARD COUNTY FISCAL COURT, et al., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

\*\* \*\* \*\* \*\* \*\*

On April 26, 2011, Defendants moved to dismiss the above-referenced action based on lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) and (h)(3). [DE 46]. On May 6, 2011, this Court issued a Memorandum Opinion and Order, [DE 52], in which it rejected Defendants' argument regarding subject matter jurisdiction but opined that Plaintiff's takings and due process claims under 42 U.S.C. § 1983 likely are not cognizable in this Court due to lack of ripeness. Because Plaintiff had not availed herself of post-deprivation remedies available to her under state law, the Court required her to show cause why the matter should not be dismissed without prejudice. Plaintiff has filed a Response to the Court's Show Cause Order, [DE 53], and Defendants have filed a Reply to Plaintiff's Response. [DE 55]. Accordingly, this matter is ripe for decision.

In her Complaint, [DE 1], Plaintiff avers, in addition to

various state law claims, that Defendants have violated 42 U.S.C. § 1983 by violating her rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. Specifically, she avers that because Defendants, acting under color of state law, "exercised governmental authority over Plaintiff's private property at the behest and complaint of private individuals who wanted to use the land for their private purposes . . . this amounts to a taking for a private, as opposed to public, purpose" in violation of the Fifth and Fourteenth Amendments. She goes on to aver, however, that "Defendants' conduct with respect to Plaintiff's private property is a physical and a regulatory taking without just compensation in violation of the United States Constitution," suggesting that she bases her takings claim on a public use theory, as well. *See Peters v. Fair,* 427 F.3d 1035, 1037 (6th Cir. 2005)("The Fifth Amendment's Takings Clause prohibits appropriation of private property for public use only where just compensation is not paid."). She also claims that Defendants' actions deprived her of the due process and equal protection guaranteed to her by the Fifth and Fourteenth Amendments. Additionally, she avers that Defendants' interference with her property rights constitutes an unreasonable seizure forbidden by the Fourth Amendment.

In Plaintiff's Response to the Court's Show Cause Order, [DE 53], she asserts two main arguments. First, she argues that although she did not seek compensation in state court, her claim is

nonetheless ripe because Defendants' conduct amounts to a private taking. Second, she argues that even if Defendants' use of her property is considered to be a taking for public use, she is not required to seek compensation through state law remedies because Kentucky provides no reasonable, certain and adequate provision by which she can obtain just compensation. For the following reasons, the Court rejects each of these arguments.

Plaintiff correctly notes that one whose property has been taken by the government for strictly private use does not have to settle for just compensation – these takings are unconstitutional regardless of whether compensation is paid. *Montgomery v. Carter Cnty., Tenn.,* 226 F.3d 758, 766 (6th Cir. 2000). Since state procedures "do not supply the appropriate remedy," a private use claim is ripe for adjudication in federal court even though the plaintiff has not sought relief in state court. *Id.* Plaintiff's private use claim is therefore ripe. The question that remains is, however, whether Plaintiff's averments of a private taking can survive a 12(b)(6) challenge. While the Court agrees that Plaintiff's private use claim is ripe and that she is able to seek relief from Defendants without resorting to state remedies, the Court is not persuaded that she has set forth averments upon which the Court could conclude that a taking for private use has occurred. In a private takings case, the plaintiff has to show that the "taking had no rational connection to a minimally

plausible conception of the public interest." *Id.* at 768. Very few takings fail to meet the standard required to show that property has been taken for public use as opposed to private use. As explained by the *Montgomery* Court:

> Examples of a taking for a private use tend to be "esoteric," *Gamble v. Eau Claire County,* 5 F.3d 285, 287 (7th Cir. 1993), because all that is required for the taking to be considered for public use is a rational relationship to some "conceivable public purpose." *See Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 241, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). Very few takings will fail to satisfy that standard. As a result, the examples suggested in the reported cases tend to be highly implausible hypotheticals. *See, e.g., Gamble,* 5 F.3d at 286 (using the example of a fictional state law authorizing the governor to take a person's home and give it to his brother-in-law).

*Id.* at 765-66. The fact that a taking creates incidental benefits for individual private parties "does not condemn that taking as having only a private purpose." *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 243-44 (1984). "The 'public use' requirement is, thus, coterminous with the scope of a sovereign's police powers." *Id.* at 240.

The Kentucky legislature has clearly set forth that it is part of the sovereign's power to open, close, or maintain a road. For example, KRS 178.115 provides that:

> [W]henever the fiscal court of any county deems it to be in the best interest of the county to open, establish or alter the location of any public road, street, alley, ditch, culvert, bridge or similar public way or structure in the county, the fiscal court shall adopt a resolution setting forth the necessity for the public road or structure , and thereupon the public road or structure shall be deemed opened, established or altered, as the

case may be, on behalf of the county. A certified copy
of the resolution shall be posted at the courthouse door
of the county within five (5) days after its adoption and
a certified copy of the resolution shall be posted by the
county road engineer of the county along or at the
proposed road or structure within five (5) days after its
adoption.

(2) In all cases where public roads or structures have
been established, any person or persons aggrieved thereby
may prosecute an appeal from a resolution of the fiscal
court by filing a petition in equity in the Circuit Court
of the county where the road or structure is located
setting forth his grievance, to which petition shall be
attached an attested or certified copy of the resolution.
The petition shall be filed within thirty-five (35) days
from the date the resolution was entered. An appeal
shall be heard and decided by the court without
intervention of a jury. Any party so appealing shall
execute and file a bond for costs at the time such appeal
is taken. An appeal to the Court of Appeals may be taken
in accordance with the Rules of Civil Procedure.

Interestingly, KRS 178.100 provides that:

[f]rom a decision of the fiscal court ordering a new road
to be opened, or ordering an alteration or discontinuance
of an existing road, or allowing gates to be erected
across a road or abolishing existing gates, or a decision
refusing any such order, the party aggrieved may bring an
action in the Circuit Court of the county where the road
is located to contest the decision of the fiscal court.

The Court considers the use of Lanham Lane averred by Plaintiff. In her Complaint, Plaintiff describes how individuals "frequently" use Lanham Lane, apparently both before and after the removal of the gate that she had erected to block access to it. She also avers that after she erected the gate, she received threats from her neighbors and "other members of the community." Further, from both Plaintiff's Complaint and the evidence that has already passed in front of this Court with respect to the parties'

5

earlier motions, the Court is aware that a number of Plaintiff's neighbors, themselves members of the public, have used Lanham Lane to access their property and that, at present, it is used by members of the public other than Plaintiff's immediate neighbors. Plaintiff has made reference to individuals who "go four-wheeling and partying" on it, much to her consternation.  In other words, even if the Court assumes that Lanham Lane was Plaintiff's private property prior to the time that her gate was torn down by county officials, Defendants used that opportunity to provide the public with access to the roadway known as Lanham Lane.  Whether the road was public for the entire duration of its existence or whether its public nature has been established (or reestablished) since the removal of Plaintiff's gate is a question to be resolved at another time.

Based on Plaintiff's averments, she cannot show that Defendants' alleged taking has "no conceivable public purpose." *See Midkiff*, 467 U.S. at 241.  As the Court already noted in this case, in the Commonwealth, roads are maintained by federal, state, county, municipal, and private means, depending on their status. No one seriously disputes that the establishment and maintenance of roadways for the public is a functional lawfully performed by Garrard County.  The question that follows is whether Plaintiff has made any averment that a true private taking has occurred, i.e., that the use of Lanham Lane is limited to one or a small subset of

Garrard County residents who live along it or that title in the real property which comprises Lanham Lane has been transferred to Plaintiff's neighbors by Defendants. The Court answers these questions in the negative. While Plaintiff compares her claims to those presented in *Montgomery v. Carter County, Commonwealth Department of Transportation v. Knieriem,* 707 S.W.2d 340 (Ky. 1986), and *Sarver v. Allen County,* 582 S.W.2d 40, 21 (Ky. 1979), those cases are easily distinguished from the one currently before the Court. *Montgomery* involved a private driveway that was included on an "official county road list" and inured benefits to a single neighbor of the plaintiff. In *Knieriem,* the state sought to condemn the plaintiff's property to create a private easement for the use of an individual business organization. Finally, in contrast to Plaintiff's Complaint, which avers that Defendants opened up Plaintiff's property to "widespread public use," *Sarver* involved a dispute over the use of a road by two neighboring landowners.

As the *Montgomery* Court pointed out, very few takings constitute takings for private use. 226 F.3d at 765-766. Further, real-life examples are rare, and Plaintiff's averments simply cannot support a claim for private taking. Plaintiff's averments concerning the community's use of Lanham Lane are incompatible with a finding of no rational relationship to a conceivable public purpose. *Id.* at 765. Rather, the opening of the lane, an act

7

within Defendants' police power, bears a clear relationship to the public purpose of providing access to Lanham Lane to the community at large. Accordingly, Plaintiff's private use claim fails as a matter of law.

To the extent that Plaintiff's Complaint asks this Court to consider whether she is due compensation for a taking of her private property for public use, she largely concedes that it is not ripe. However, she avers that her rights under the Fifth and Fourteenth Amendments were violated because "Defendants' conduct with respect to Plaintiff's private property is a physical and regulatory taking without just compensation," "[p]re-deprivation procedures afforded Plaintiff were not in keeping with constitutional principles of due process, and there is no adequate post-deprivation remedy afforded Plaintiff." *See* DE 53 at 4. More to the point, while she does not aver that she has sought relief in state proceedings, she continues to argue that post-deprivation remedies would not be enough, relying on case law requiring pre-deprivation process in certain situations. In situations where the State feasibly can provide a pre-deprivation hearing before taking the property, it generally must do so regardless of the adequacy of a post-deprivation tort remedy to compensate for the taking. *Zinermon v. Burch,* 494 U.S. 113, 132 (1990). Procedural due process generally requires that an individual be given adequate notice and an opportunity to be heard prior to a property

8

deprivation.  *See Cash v. Hamilton Cnty. Dep't of Adult Prob.,* 388 F.3d 539, 544 (6th Cir. 2004).  In her Complaint, Plaintiff avers that, prior to the removal of her gate, the issue was taken up during an August 2007 meeting of the Garrard County Fiscal Court.  She avers that she and a host of other individuals were allowed to speak during the meeting and that, despite the Garrard County attorney's characterization of Lanham Lane as a private road, the Fiscal Court voted to remove the gate.  While Plaintiff contends that these pre-deprivation procedures were insufficient, the Court will not pass judgment on their adequacy when the challenge to them is brought in conjunction with an unripe takings claim.  Plaintiff's due process claims involve the same facts as and are ancillary to her takings claim.  They are, therefore, governed by the rule applicable to takings claims – that plaintiffs generally are required to exhaust state remedies before bringing such claims in federal court.  *See Braun v. Ann Arbor Charter Twp.,* 519 F.3d 564, 571-72 (6th Cir. 2008); *Peters v. Fair,* 427 F.3d 1035, 1037 (6th Cir. 2005)(citing *Warren v. City of Athens, Ohio,* 411 F.3d 697, 708 (6th Cir. 2005)(substantive and procedural due process claims that are ancillary to takings claims are also subject to ripeness requirement)).

Plaintiff also argues that her claim is ripe because the state does not provide adequate procedures to compensate her for the deprivation of her property.  The Fifth Amendment does not prohibit

a government from taking, for a public purpose, the private property of individuals. Rather, it prohibits the taking of private property without just compensation. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194 (1985). And just compensation does not have to be paid in advance or even contemporaneously with the government's taking of property. *Id.* The only requirement is that, at the time of the taking, "a reasonable, certain and adequate provision for obtaining compensation" exist. *Id.* (internal quotations omitted). Here, Plaintiff argues that her takings claim is ripe because no reasonable, certain, and adequate provisions for obtaining compensation exist under Kentucky law.

Reverse condemnation is a cause of action recognized under Kentucky law, by which a landowner can recover the fair market value of property that the government has taken for public use. *See Holloway Constr. Co. v. Smith,* 683 S.W.2d 248, 249-50 (Ky. 1984); *Commonwealth of Ky., Natural Res. & Env't Prot. Cabinet v. Stearns Coal & Lumbar Co.,* 678 S.W.2d 378, 381 (Ky. 1984). Plaintiff argues that this process is inappropriate because the parties disagree as to the nature of the use of the lane (i.e., public versus private) and as to the true ownership of the lane. The existence of these issues, however, does not render reverse condemnation an inadequate means of securing compensation if there has been a taking. Remaining questions of fact, such as these, do

no obviate the ripeness requirement of takings claims and there is no reason that these issues cannot be addressed adequately in a state court action. Plaintiff goes on to argue that reverse condemnation is inappropriate because she does not wish to transfer her property rights in Lanham Lane to Garrard County and because Garrard County has expressed no interest in acquiring rights to the lane. It is Garrard County's position that it already owns the lane, so it is not surprising that it has not expressed an interest in acquiring property rights. If Plaintiff Scott actually is the owner of Lanham Lane, it is of no consequence that she does not wish to convey her rights to it – Garrard County still has the right to take it for public use, so long as it justly compensates Scott for the taking.

Finally, Plaintiff argues that reverse condemnation is not adequate because Defendants' alleged interference with Plaintiff's property rights may not give rise to a cognizable reverse condemnation claim. Plaintiff relies on *Thompson v. Fayette County,* 302 S.W.2d 550, 551 (Ky. 1957), which held that a taking, for purposes of reverse condemnation, had not occurred where the county merely had adopted a formal resolution establishing a public road on Plaintiff's private property. In *Stearns Coal & Lumbar Company,* the Kentucky Supreme Court noted that a legal taking, at least for the purposes of inverse condemnation actions, "involve[s] acts which completely frustrate the landowner's rights and

11

deprive[s] him of the use of his property." 678 S.W.2d at 382. Plaintiff argues that because Defendants merely removed the gate from her property and have otherwise made no formal claim to the property, a Kentucky court is unlikely to deem Defendants' actions a taking and therefore reverse condemnation will be unavailable to her. While the Court appreciates Plaintiff's argument, the facts presented do not amount to a clear foreclosure of reverse condemnation as a remedy in state court. When state law remedies are "potentially available" and a plaintiff has not pursued them, a federal takings claim is not ripe. *Brisbane v. Milano,* No. 10-3470-cv, 2011 WL 4952985, at *2 (2d Cir. Oct. 19, 2011). To avoid the requirement of first pursuing relief in state court, a plaintiff must show that "the state law 'expressly precludes use of the inverse condemnation remedy' in the plaintiff's case." *Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations,* 643 F.3d 16, 26 (1st Cir. 2011)(quoting *Deniz v. Mun. of Guaynabo,* 285 F.3d 142, 147 (1st Cir. 2002)). Other circuits agree, as stated in *Downing/Salt Pond Partners*:

> [T]he burden is on the plaintiff to prove the absolute unavailability or inadequacy of potential state remedies in order to be excused from the state litigation requirement. *See, e.g. Island Park, LLC v. CSX Transp.,* 559 F.3d 96, 109 (2d Cir. 2009)(plaintiff must pursue even unsure and undeveloped possibilities for relief); *Rockstead v. City of Crystal Lake,* 486 F.3d 963, 965-66 (7th Cir. 2007)(plaintiff must challenge out-of-date state common law precedent denying validity of particular type of inverse condemnation claim); *Urban Developers LLC v. City of Jackson, Miss.,* 468 F.3d 281, 295 (5th Cir. 2006); *Austin v. City & Cnty. of Honolulu,* 840 F.2d 678,

680 (9th Cir. 1988).

643 F.3d at 26.

Further, reverse condemnation is not the only possible remedy available to Plaintiff in state court. For example, Plaintiff could institute an action to quiet title to Lanham Lane and pursue state law remedies if she is determined to be the owner of the property. *See* KRS 411.120. Ultimately, it is up to Plaintiff to decide whether to seek relief in state court and, if so, what type of relief to pursue. Plaintiff has failed to show, however, that Kentucky does not offer a reasonable, certain, and adequate provision for obtaining compensation for the taking of Plaintiff's land if, indeed, a taking did occur.

Plaintiff has also raised an equal protection claim under 42 U.S.C. § 1983. Under the Equal Protection Clause of the Fourteenth Amendment, a state is forbidden from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. Further, the states are forbidden from making distinctions that "burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005). Where, as here, Plaintiff alleges a violation of the third type, the claim proceeds on a "class of one" theory. *Taylor Acquisitions, L.L.C. v. City of Taylor,* 313 F. App'x 826, 836 (6th

Cir. 2009). To prevail on a class of one theory, Plaintiff must prove that the government treated individuals, similarly situated in all material respects, differently than Plaintiff. *Id.* (citing *Braun,* 519 F.3d at 575). Additionally, Plaintiff must show that the government lacked a rational basis for its actions. *TriHealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 791 (6th Cir. 2005). The standard for proving the lack of a rational basis is rigorous – Plaintiff must show that "the varying treatment of different . . . persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)(alterations in original). Plaintiff has failed to aver any facts that suggest she could prevail on her equal protection claim. She does not attempt to describe the individuals from whom she was treated differently or Defendants' lack of a rational basis for its actions. A complaint must state more than mere legal conclusions or a recitation of the elements of the cause of action – it must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Plaintiff has presented no facts beyond her conclusory allegations that Defendants treated her differently than similarly situated individuals. Accordingly, unless the Court is persuaded otherwise, it is of the opinion that Plaintiff's equal protection claim should

be dismissed for failure to state a claim upon which relief can be granted.

Finally, the Court considers Plaintiff's claim that Defendants violated her Fourth Amendment right to be free from unreasonable seizures. "[A] seizure of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Cochran v. Folger,* 740 F. Supp. 2d 923, 931 (6th Cir. 2010)(quoting *Thomas v. Cohen,* 304 F.3d 563, 569 (6th Cir. 2002)). Plaintiff characterizes Defendants' removal of her gate and chain, as well as Defendants' interference with Lanham Lane itself, as unconstitutional seizures under 42 U.S.C. § 1983. The Court finds it appropriate to consider the alleged seizure of Lanham Lane apart from the alleged seizure of the gate and chain. It is clear that the Fourth Amendment's protections against unreasonable seizures can extend to real property. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 52 (1993). But while some courts have recognized Fourth Amendment claims as being separate and independent of takings claims[1], this Court is not persuaded that this is the correct analysis in a situation such

---

[1] The Court notes that the Fifth Circuit has taken this view. *See Severance v. Patterson,* 566 F.3d 490, 501 (5th Cir. 2009)(finding that the Fourth Amendment applies to civil as well as criminal seizures and plaintiff's Fourth Amendment claim was not subsumed by takings claim and was, therefore, separately cognizable). *See also Presley v. City of Charlottesville,* 464 F.3d 480, 487 (4th Cir. 2006)(Plaintiff's claim under the Fifth Amendment's Takings Clause did not bar her from bringing separate Fourth Amendment seizure claim).

as Plaintiff's. To allow Plaintiff to pursue a Fourth Amendment claim for the seizure of Lanham Lane would eviscerate the ripeness requirement for takings claims under the Fifth Amendment. The Court is not convinced that Plaintiff can escape those requirements by asserting a claim that is nearly identical to her takings claim by simply labeling it a Fourth Amendment claim. Further, to establish a claim under the Fourth Amendment, Plaintiff must establish that the seizure of her property was unreasonable. *See Soldal v. Cook Cnty., Ill.,* 506 U.S. 56, 62 (1992). Because it is within Defendants' police power to open and establish roads, the Court is not persuaded that Plaintiff has averred facts upon which Defendants' actions could be deemed unreasonable.

Plaintiff's claims for the seizure of her gate and lock warrant a different analysis. There is no assertion that these items were seized for anyone's use – public or private. In fact, Plaintiff's Complaint suggests that they were essentially destroyed due to Defendants' action. Plaintiff's averments regarding the seizure of these items falls more squarely under a traditional Fourth Amendment analysis, for which no resort to state remedies is required. Accordingly, the Court is of the opinion the issue of the seizure of the gate and chain is properly before it.

Therefore, **IT IS ORDERED**:

1) Plaintiff's due process and takings claims, brought under the Fifth and Fourteenth Amendments, are hereby **DISMISSED WITHOUT**

**PREJUDICE;** and

2) Plaintiff shall **SHOW CAUSE**, on or before February 3, 2012 why her claim for the unreasonable seizure of real property and her equal protection claim should not be dismissed without prejudice.

This the 20th day of January, 2012.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge